IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AIMEE J. LAHEY, ) <br> ) <br>         Plaintiff, ) <br> ) <br>         v. ) <br> ) <br> COMMISSIONER, SOCIAL SECURITY ) <br> ADMINISTRATION, ) <br> ) <br>         Defendant. ) | Civil No. 06-863-JO <br><br> <u>OPINION AND ORDER</u> |

George J. Wall
LAW OFFICES OF GEORGE J. WALL
1336 E. Burnside, Suite 130
Portland, OR  97214

   Attorney for Plaintiff

David M. Blume
Michael McGaughran
SOCIAL SECURITY ADMINISTRATION
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, WA  98104

Neil J. Evans
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

JONES, Judge:

Claimant Aimee Lahey seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying her applications for Supplemental Security Income ("SSI") disability benefits and Disability Insurance ("DIB") benefits. See 42 U.S.C. §§ 401-34, 1381-83f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, I affirm in part, reverse in part, and remand the case for further proceedings.

## ADMINISTRATIVE HISTORY

Claimant protectively filed concurrent applications for DIB and SSI disability benefits on January 23, 2003. She initially alleged disability since March 6, 2002, later amended to March 7, 2003, due to multiple sclerosis ("MS"), chemical dependency, and foot pain. Claimant's applications were denied initially and on reconsideration, and she timely filed a request for a hearing, which was held before an Administrative Law Judge ("ALJ") on May 10, 2005. Claimant, who was represented by counsel, appeared and testified, as did a vocational expert. On July 29, 2005, the ALJ issued a decision denying claimant's applications. The ALJ's decision became the final decision of the Commissioner on April 18, 2006, when the Appeals Council denied review.

2 - OPINION AND ORDER

STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Andrews, 53 F.3d at 1039-40.

SUMMARY OF THE ALJ'S FINDINGS

The ALJ first determined that claimant met the nondisability requirements for a period of disability and DIB and was insured through the date of the hearing decision. The ALJ then employed a five-step "sequential evaluation" process in evaluating claimant's disability, as required. See 20 C.F.R. §§ 404.1520, 416.920.

In the first step, the ALJ found that claimant has not engaged in substantial gainful activity since the alleged onset of her disability. Tr. 18. Second, the ALJ found that claimant's MS is a "severe" impairment, but that it does not meet or medically equal one of the listed impairments in the Listing of Impairments, Appendix 1, Subpart P, Regulation No. 4. Id.

In the next step, the ALJ determined that claimant "has the following residual functional capacity: can stand and walk five minutes at a time for one hour maximum in a day; can stand

for ten minutes at a time for one hour maximum in a day; has no limitations in sitting; can lift and carry ten pounds on a frequent basis; and cannot * * * work in extremes of heat or cold temperatures." Tr. 19. In making this determination, the ALJ found claimant's allegations regarding her limitations to not be fully credible.

The ALJ next found that claimant could not perform her past relevant work. Based upon her age (younger individual), education (more than a high school or equivalent education), and residual functional capacity to perform a significant range of sedentary work, and considering the testimony of a vocational expert, the ALJ found that claimant could perform a significant number of jobs in the national economy, including work as a receptionist and a telephone operator. Consequently, the ALJ found that claimant was not under a "disability" within the meaning of the Social Security Act and denied her applications for benefits. Tr. 19.

## STATEMENT OF FACTS

Claimant was born on January 15, 1971; she was 34 years old at the time of the hearing. She has a high school education and some college. Her past work experience includes employment as a dental assistant and bar tender. She stopped work on March 7, 2003, and was admitted to a hospital to give birth to her child on March 8, 2003. She alleges that she stopped working due to fatigue. Tr. 63. Claimant admits to crack cocaine and alcohol abuse and signed herself into a treatment facility, in which she resided between April 11, 2003 and May 15, 2003. Tr. 124.

The parties are familiar with the medical and other evidence of record, which I will not repeat except as necessary to explain my decision.

DISCUSSION

Claimant challenges the final decision of the Commissioner on the several grounds. Specifically, claimant contends that the ALJ erred by: (1) failing to find that her MS met Listing 11.09C; (2) failing to properly evaluate claimant's reports of fatigue and leg pain; (3) improperly discounting her credibility; and (4) failing to give controlling weight to the opinions of her treating physician.

1.      Listing 11.09C

Claimant argues that the ALJ erred in failing to find her disabled under Listing 11.09C for MS. Listing 11.09C requires proof of:

> Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. § 404, Subpt. P, App. 1, 11.09C. Claimant has the burden of proving that she satisfies the criteria for that listing based on medical evidence. Sullivan v. Zebley, 493 U.S. 521, 531 (1990). "[The] claimant must establish that [she] meets *each characteristic* of a listed impairment relevant to [her] claim." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (emphasis added).

Establishing Listing 11.09C is "dependent upon (1) documenting a diagnosis of multiple sclerosis, (2) obtaining a description of fatigue considered to be characteristic of multiple sclerosis, and (3) obtaining evidence that the system has actually become fatigued." 20 C.F.R. § 404, Subpt. P, App. 1, 11.00E. The first step, documenting a diagnosis of MS, is not in dispute. The ALJ found that claimant had a diagnosis of MS that was confirmed by MRI findings. Tr. 16.

5 - OPINION AND ORDER

At issue, however, is the sufficiency of claimant's evidence that her muscle weakness and fatigue are attributable to a neurological dysfunction, and not to her lifestyle (i.e., having a baby). As stated, claimant has the burden of demonstrating that the fatigue is "significant, reproducible *fatigue* of *motor function* with substantial *muscle weakness* on repetitive activity, demonstrated on physical examination * * *." Listing 11.09C (emphasis added). I agree with the Commissioner that claimant failed to meet that burden.

The ALJ found that claimant had "some fatigue due to multiple sclerosis" but that her complaints of debilitating fatigue were not supported by objective medical evidence. In concluding that claimant's MS did not meet or equal the listing, the ALJ found claimant's credibility to be "limited" and gave Dr. Goslin's opinion that claimant cannot perform work activity little weight, because Dr. Goslin's opinion was based on claimant's representations and was not supported by objective medical evidence, including Dr. Goslin's own records. As discussed below, both findings are supported by substantial evidence.

Thus, while claimant's complaints of "fatigue" are documented in the record, that fatigue is general fatigue, not the required "fatigue of motor function * * * demonstrated on physical examination." Indeed, although Dr. Goslin reported that claimant is fully non-functional 22 hours per day -- based on claimant's subjective representations only -- Dr. Goslin's records reveal that she consistently determined that claimant had normal motor function and strength on physical examination. Tr. 245, 328-31, 347, 348, 350. On June 5, 2003, Dr. Goslin noted that there was some clumsiness in claimant's hands, but "no specific weakness." Tr. 245. Dr. Goslin's report of a medical examination on April 5, 2004, states that the exam was "unremarkable" and that claimant's neurological examination was normal, which is inconsistent

6 - OPINION AND ORDER

with Dr. Goslin's report, just four months earlier, that claimant was "entirely disabled." Tr. 16, 348. Motor exams on June 5, 2003, December 8, 2003, and January 31, 2005, showed normal muscle tone and bulk, with strength rated as "5/5." Tr. 245, 347, 350. An April 18, 2005, general motor survey was normal. Tr. 328-31.

Thus, not only did claimant fail to establish the requisite fatigue of motor function on physical examination, but the medical examinations of record reveal that her muscle strength was normal. Moreover, the ALJ ultimately determined that Dr. Goslin's disability opinion was "especially contrary" to claimant's actual activities of daily living, which, as discussed below, belie her claim of an inability to sustain even sedentary work. Tr. 16.

Claimant contends that the ALJ should have further developed the record by calling a medical expert. An ALJ has discretion to call an expert, 20 C.F.R. §§ 404.1527(f)(2)(iii), 416.927(f)(2)(iii), and has a duty to develop the record fully and fairly to assure that a claimant's interests are considered. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty to develop the record is, however, triggered by ambiguous evidence or a record that is inadequate to permit the proper evaluation of the evidence. Id. In this case, claimant's unremarkable medical and neurological examinations show that her muscle strength was normal. The ALJ had no obligation to develop the record further and did not err in determining that claimant's MS does not meet Listing 11.09C.

2.  The ALJ's Credibility Determination

Claimant contends that the ALJ improperly rejected her testimony of disabling pain and fatigue. I disagree. The ALJ's credibility determination is supported by specific and non-arbitrary findings. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Thomas v.

7 - OPINION AND ORDER

Barnhart, 278 F.3d 947, 958 (9th Cir. 2001). Although the ALJ incorrectly noted that claimant cared for a toddler between her initial alleged onset date of March 6, 2002, and May and June 2003, when she received inpatient drug treatment, the ALJ correctly noted that during that time period, she worked as a dental assistant. In March 2003, claimant stopped work two days before the birth of her youngest child. Tr. 373-74. In April 2003, claimant was able to babysit, without outside assistance, two-year-old twins. Tr. 73. Additionally, claimant lived alone with three children, an infant and two children of school age. Tr. 374. The ALJ found that claimant stopped work not because of disability but because of the birth of her child. Tr. 16. The ALJ also found the credibility of claimant's testimony to be "limited" because "she would be unable to perform all the activities of raising her children if she were as limited as she relates * * *." Tr. 16.

Not all of an ALJ's reasons for discrediting a claimant's testimony must be upheld, as long as substantial evidence support's the ALJ's determination. Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1197 (9th Cir. 2004). That a claimant quit work for reasons unrelated to a medical condition is a proper discrediting factor. Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Similarly, parenting activity performed without significant assistance is a proper discrediting factor. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). Although claimant contends that she had significant assistance in raising her children, the record reflects that after her alleged date of onset, she was able to babysit two two-year old toddlers without assistance. The ALJ's credibility determination is a rational determination based on the evidence, and must be upheld. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005).

8 - OPINION AND ORDER

3.  Dr. Goslin's Opinions

In a letter dated January 27, 2004, Dr. Goslin stated that claimant was "entirely disabled by multiple sclerosis." Tr. 349. Over a year later, by letter dated May 2, 2005, Dr. Goslin recommended that claimant not work, reported that claimant is not physically able to perform her usual work, and concluded that claimant is not a good candidate for vocational rehabilitation. Tr. 353. Out of an eight hour period, Dr. Goslin rated claimant as able to sit for any one hour at a time, able to stand for any one hour at a time, and able to walk for zero hours. Tr. 354. Claimant argues that the ALJ improperly rejected those opinions.

An ALJ must consider all relevant medical evidence and must resolve ambiguities and conflicts. Batson, 359 F.3d at 1195; see also 20 C.F.R. §§ 404.1527, 416.927. An ALJ must give clear and convincing reasons supported by substantial evidence to reject uncontradicted opinions of treating and examining doctors. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Where a treating or examining doctor's opinion is contradicted by another doctor, the ALJ must give specific and legitimate reasons to reject it. Id. An ALJ may also reject any doctor's opinion that is unsupported by the record as a whole, including clinical findings, treatment notes, contrary medical opinions, and claimant's daily activities, or that is premised on claimant's properly discredited subjective complaints. Id. at 1216-17; Batson, 359 F.3d at 1195.

In this case, the ALJ properly assigned "little weight" to Dr. Goslin's disability opinions. As the ALJ noted, Dr. Goslin's opinions, which effectively characterized claimant as "fully non-functional 22 hours per day" (Tr. 16), were based solely on claimant's own representations, and conflicted with the objective medical evidence, Dr. Goslin's own medical records, and claimant's actual activities of daily living. In other words, the ALJ found Dr. Goslin's opinions to be

9 - OPINION AND ORDER

contradicted by the record as a whole, including the opinions of Dr. Kehrli, a finding supported by substantial evidence. I conclude that the ALJ properly explained his rejection of Dr. Goslin's disability opinions in assessing claimant's residual functional capacity.

4.   The Vocational Findings

Claimant challenges the ALJ's residual functional capacity ("RFC") assessment based, in essence, on the three arguments discussed above. Because I find that the ALJ properly rejected Dr. Goslin's opinions, properly assessed claimant's credibility, and properly found that her MS does not meet the criteria of Listing 11.09C, claimant's challenge to the RFC determination is without merit. However, because the ALJ clearly erred at steps four and five, this case must be remanded for further proceedings.

The ALJ found that claimant "can stand and walk five minutes at a time for one hour maximum in a day; can stand for ten minutes at a time for one hour maximum in a day; has no limitations in sitting; can lift and carry ten pounds on a frequent basis; and cannot work in extremes of hot or cold temperatures." Tr. 16-17. The ALJ then asked the vocational expert whether a hypothetical individual of claimant's age, educational, and vocational background with the described limitations could perform any of claimant's past relevant work. The vocational expert testified that "she could return to work as a *data entry clerk or telemarketer*." Tr. 387 (emphasis added).

The ALJ then proceeded to step five, asking the vocational expert whether there were other jobs in the national economy that the hypothetical worker could perform. The vocational expert responded that claimant could "be returned to work as a receptionist," and could also work as a "telephone operator." Tr. 388.

10 - OPINION AND ORDER

In his written decision, the ALJ misstated the vocational expert's testimony, finding that claimant "cannot perform her past relevant work as a dental assistant, bartender, *telephone operator, and data entry clerk*." Tr. 17 (emphasis added). The ALJ then compounds the mistake by finding, again based on the vocational expert's testimony, that claimant can work as a receptionist and a "telephone operator."

The parties have not raised the issue, but the error, although perhaps a technical one, is clear error. Under the Dictionary of Occupational Titles, telemarketer, which is listed under Occupational Division 235, is distinct from telephone operator, which is listed under Occupational Code 299.357-014.[1] And it is clear error for the ALJ to conclude both that claimant *cannot* perform her past work as a telephone operator (if she ever performed that work at all) at step four of the analysis, and *can* perform work as a telephone operator at step five. Given these errors, I conclude that this case must be remanded for further proceedings at step four and, if necessary, step five of the disability analysis.

Remand for an award of benefits is inappropriate because apart from the ALJ's erroneous findings at steps four and five, I conclude that the ALJ's other findings, including the RFC determination, were proper. Consequently, in the exercise of my discretion, I remand this action to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

---

[1] The Court takes judicial notice of U.S. DEP'T. OF LABOR, EMPLOYMENT AND TRAINING ADMIN., DICTIONARY OF OCCUPATIONAL TITLES 205, 236 (4th Ed. 1991).

## CONCLUSION

For the reasons stated, the decision of the Commissioner is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Any pending motions are denied as moot.

DATED this 21st day of June, 2007.

_____
ROBERT E. JONES
U.S. District Judge